12

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

v.

NABIL MOHSEN-MOHSEN AL-SUBARI, R.Ph.,

Defendant.

_____/

Case: 2:20-cr-20451
Judge: Parker, Linda V.
MJ: Whalen, R. Steven
Filed: 09-23-2020 At 11:23 AM
INDI USA V. SEALED MATTER (DA)

VIO.: 18 U.S.C. § 1347
18 U.S.C. § 2
18 U.S.C. § 981
18 U.S.C. § 982

# INDICTMENT

**THE GRAND JURY CHARGES**:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

### The Medicare and Medicaid Programs

1. The Medicare program ("Medicare") was a federal health care program providing benefits to persons who were 65 years of age or older or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2. Medicare covered different types of benefits and was separated into different program "parts." Medicare Part D subsidized the cost of prescription drugs

for Medicare beneficiaries in the United States. Generally, Medicare Part D covered part or all of the costs of prescription drugs dispensed to a Medicare beneficiary if, among other requirements, the prescription drugs were medically necessary and ordered by a physician.

3. In order to receive Medicare Part D benefits, a beneficiary enrolled in one of several Medicare drug plans. Medicare drug plans were operated by private health care insurance companies approved by Medicare. Those companies were often referred to as drug plan "sponsors." A beneficiary in a Medicare drug plan could fill a prescription at a pharmacy and use his or her plan to pay for some or all of the prescription drugs.

4. Medicare, through CMS, compensated the Medicare drug plan sponsors for providing prescription drug benefits to beneficiaries. Medicare paid the sponsors a monthly fee for each Medicare beneficiary of the sponsors' plans. Such payments were called capitation fees. The capitation fee was adjusted periodically based on various factors, including the beneficiary's medical conditions. In addition, in some cases where a sponsor's expenses for a beneficiary's prescription drugs exceeded that beneficiary's capitation fee, Medicare reimbursed the sponsor for a portion of those additional expenses.

5. The Michigan Medicaid program ("Medicaid") was a federal and state funded health care program providing benefits to individuals and families who met

specified financial and other eligibility requirements, and certain other individuals who lacked adequate resources to pay for medical care. CMS was responsible for overseeing the Medicaid program in participating states, including Michigan. Individuals who received benefits under Medicaid were referred to as Medicaid "beneficiaries."

6. Medicaid covered the costs of certain medical services, products, and benefits, including prescription drug benefits, for Medicaid beneficiaries. Generally, Medicaid covered part or all of the costs of prescription drugs dispensed to a Medicaid beneficiary if, among other requirements, the prescription drugs were medically necessary and ordered by a physician.

7. Medicaid paid for covered services either through what was called Medicaid "fee-for-service" or through Medicaid health plans.

8. Medicare, Medicare drug plan sponsors, Medicaid, and Medicaid health plans were "health care benefit program[s]," as defined by Title 18, United States Code, Section 24(b).

### The Private Health Insurance Program

9. Blue Cross and Blue Shield of Michigan ("BCBS") was a nonprofit, privately operated insurance company authorized and licensed to do business in the state of Michigan. BCBS provided health care benefits, including prescription drug

benefits, to member entities and individuals. Individuals insured by BCBS were referred to as BCBS "members."

10. BCBS had agreements with participating providers, including pharmacies, to furnish medical services to BCBS members.

11. BCBS was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

### Pharmacy Benefit Managers

12. Pharmacy benefit managers ("PBMs") managed prescription drug benefits provided by Medicare (through Medicare drug plan sponsors), Medicaid health plans, and BCBS. PBMs received, adjudicated, and paid claims on behalf of the health care benefit programs.

13. After a pharmacy dispensed a prescription drug to a beneficiary or member, the pharmacy submitted a claim, typically electronically, to the PBM acting on behalf of the specific health care benefit program. The PBM, on behalf of the health care benefit program, reimbursed the pharmacy, typically electronically, through direct deposits into accounts held, and previously identified, by the pharmacy.

14. CVS Caremark and Express Scripts were two of several PBMs that managed prescription drug benefits for Medicare (through Medicare drug plan sponsors) and Medicaid health plans. Express Scripts managed prescription drug

4

benefits for BCBS. CVS Caremark processed and adjudicated claims in Arizona. Express Scripts processed and adjudicated claims outside the state of Michigan.

### The Pharmacy

15. Dix Family Care Pharmacy LLC ("Dix") was a pharmacy and Michigan corporation located at 10035 West Vernor Highway, Dearborn, MI 48120.

### The Defendant

16. Defendant NABIL MOHSEN-MOHSEN AL-SUBARI ("AL-SUBARI"), a resident of Wayne County, Michigan, was a licensed pharmacist in Michigan and the owner, and pharmacist-in-charge of Dix.

### COUNTS 1-5
### Health Care Fraud
### (18 U.S.C. § 1347 and 2)

17. Paragraphs 1 through 16 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

18. On or about the dates set forth below, in Wayne County, in the Eastern District of Michigan, and elsewhere, AL-SUBARI did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare and Medicare drug plan sponsors, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money

and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services.

## Purpose of the Scheme and Artifice

19. It was a purpose of the scheme and artifice for AL-SUBARI to unlawfully enrich themselves, among other things: (a) submitting, and causing the submission of, false and fraudulent claims to Medicare and Medicare drug plan sponsors through Dix; (b) concealing, and causing the concealment of, the submission of false and fraudulent claims to Medicare and Medicare drug plan sponsors, and the receipt and transfer of the proceeds of the fraud; and (c) diverting fraud proceeds for the personal use and benefit of the defendant and others.

## The Scheme and Artifice

20. AL-SUBARI maintained national provider identifiers for Dix in order to submit claims to Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS.

21. AL-SUBARI, on behalf of Dix, entered into pharmacy provider agreements with CVS Caremark and Express Scripts, among other PBMs.

22. AL-SUBARI submitted, and caused the submission of, claims to Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS that falsely and fraudulently represented various health care benefits,

primarily prescription drugs, were medically necessary, prescribed by a doctor and provided to beneficiaries by Dix.

23. AL-SUBARI submitted, and caused the submission of, false and fraudulent claims to Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS, via interstate wires and on behalf of Dix, for prescription drugs that were not dispensed.

24. AL-SUBARI submitted, and caused the submission of, false and fraudulent claims to Medicare and Medicare drug plan sponsors, via interstate wires and on behalf of Dix, for prescription drugs purportedly dispensed to persons who were, in fact, deceased.

25. As a result of such false and fraudulent claims, Medicare and Medicaid prescription drug plan sponsors, through their PBMs, made overpayments funded by the Medicare Part D program and Medicaid to Dix, of approximately $1,862,660.59.

26. As a result of such false and fraudulent claims, BCBS prescription drug plan sponsors, through their PBMs, made overpayments funded by BCBS to Dearborn, of approximately $275,408.24.

27. AL-SUBARI caused the transfer and disbursement of illicit proceeds derived from the fraudulent scheme to himself and others.

## Acts in Execution of the Scheme and Artifice

28. On or about the dates set forth below, in Wayne County, in the Eastern District of Michigan, AL-SUBARI did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare and Medicare drug plan sponsors, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, in that AL-SUBARI submitted and caused the submission of false and fraudulent claims for payment and falsely represented that Dix provided prescription medications to Medicare and Medicaid beneficiaries:

| Count | Program | Beneficiary | Claim Date | Description of Prescription Medication |
|---|---|---|---|---|
| 1 | Medicare | H.M. | May 12, 2016 | Lantos Solos |
| 2 | Medicaid | S.C. | February 18, 2017 | Qvar |
| 3 | Medicaid | N.T. | October 28, 2017 | Ventolin |

| Count | Program | Beneficiary | Claim Date | Description of Prescription Medication |
|---|---|---|---|---|
| 4 | Medicare | D.J. | March 22, 2018 | Basalgar |
| 5 | Medicaid | A.A. | December 22, 2018 | Adcirca |

All in violation of Title 18, United States Code, Sections 1347 and 2.

## CRIMINAL FORFEITURE

29. The above allegations contained in this Indictment are incorporated by reference as if set forth fully herein for the purpose of alleging criminal forfeiture to the United States of America of certain property in which AL-SUBARI has an interest.

30. Upon conviction of a violation alleged in this Indictment, AL-SUBARI shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from proceeds and/or gross proceeds traceable to the commission of such violations, pursuant to 18 U.S.C. § 982(a)(7) and 18 U.S.C. § 981(a)(1)(C), as incorporated by 28 U.S.C. § 2461.

31. *Substitute Assets*: If the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    a.) cannot be located upon the exercise of due diligence;

b.) has been transferred or sold to, or deposited with, a third party;

c.) has been placed beyond the jurisdiction of the Court;

d.) has been substantially diminished in value; or

e.) has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 982(b) and/or 28 U.S.C. § 2461, to seek to forfeit any other property of defendant, up to the value of the forfeitable property described above.

32. *Money Judgment*: The government shall also seek a forfeiture money judgment from the defendant for a sum of money representing the total amount of proceeds obtained as a result of defendant's violations of 18 U.S.C. §§ 1347, as alleged in this Indictment.

THIS IS A TRUE BILL.

s/Grand Jury Foreperson
Grand Jury Foreperson


MATTHEW SCHNEIDER
UNITED STATES ATTORNEY

DANIEL KAHN
ACTING CHIEF, FRAUD SECTION
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

REGINA R. MCCULLOUGH
Chief, Health Care Fraud Unit
Assistant United States Attorney


MALISA DUBAL
Assistant Chief, Fraud Section
U.S. Department of Justice


s/Patrick J. Suter
PATRICK J. SUTER
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Avenue, N.W.
Eighth Floor
Washington, D.C. 20005
(202) 679-1430
patrick.suter2@usdoj.gov



Dated: September 23, 2020

| United States District Court<br>Eastern District of Michigan | Criminal Case Cov[er] | Case: 2:20-cr-20451<br>Judge: Parker, Linda V.<br>MJ: Whalen, R. Steven<br>Filed: 09-23-2020 At 11:23 AM<br>INDI USA V. SEALED MATTER (DA) |

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to comp[lete]

| Companion Case Information | Companion Case Number: |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: |
| ☐ Yes    ☒ No | AUSA's Initials: PJS |

**Case Title:** USA v. NABIL MOHSEN-MOHSEN AL-SUBARI

**County where offense occurred:** Wayne

**Check One:**    ☒ Felony        ☐ Misdemeanor        ☐ Petty

✓ Indictment/____Information --- **no** prior complaint.
____Indictment/____Information --- based upon prior complaint [Case number:                    ]
____Indictment/____Information --- based upon **LCrR 57.10 (d)** *[Complete Superseding section below]*.

**Superseding Case Information**

**Superseding to Case No:** _____    **Judge:** _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if ~~applicable~~)** |
|---|---|---|
| | | |

Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.

September 23, 2020
Date

Patrick J. Suter, Trial Attorney
211 West Fort Street, Detroit, MI 48226
Phone: (202) 679-1430
Fax:   (313) 226 - 0816
E-Mail address: Patrick.Suter2@usdoj.gov
Attorney Bar #: CA 242494

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.